UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**14 CV   6633**

- - - - - - - - - - - - - - - - - - - - - - - - - x

MCKENNA LONG & ALDRIDGE, LLP;           :
SONG JUNG; and GASPARE BONO,            :
                                        :
                        *Plaintiffs*,   :   Civil Action No.
                                        :
        - against -                     :   **COMPLAINT FOR**
                                        :   **DECLARATORY JUDGMENT**
IRONSHORE SPECIALTY INSURANCE           :
COMPANY,                                :
                                        :
                        *Defendants*.   :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - x

RECEIVED

AUG 19 2014

U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiffs McKenna Long & Aldridge, LLP ("McKenna"), Song Jung, and Gaspare Bono

(collectively, "Plaintiffs"), by and through their attorneys, allege as follows:

## NATURE OF THE ACTION

        1.      This action is needed to forestall an improper attempt by Ironshore Specialty

Insurance Company ("Ironshore" or "Defendant") to drag Plaintiffs, a law firm and two of its

partners, into an arbitration in which they never agreed to participate between Ironshore and

certain of its insureds, Eidos Partners LLC and several of its subsidiaries (collectively, "Eidos").

        2.      In the arbitration, Ironshore is seeking to avoid its obligation to pay on an

insurance policy that Ironshore, as insurer, issued to Eidos, as insured.  Apart from Eidos, there

are no other parties to the insurance policy (the "Policy").

        3.      Ironshore bases jurisdiction for the arbitration on a provision in the Policy.

        4.      Ironshore initiated arbitration against Eidos alone.  But Ironshore has now

amended its statement of claim to add Plaintiffs and certain other third parties as respondents.

        5.      Plaintiffs have never consented to arbitrate this dispute—or any dispute—with

Ironshore.  Plaintiffs are not parties to the Policy's arbitration provision that is the exclusive

basis of arbitrability of this dispute. Plaintiffs are not signatories to the Policy containing the arbitration provision. They are not loss payees under the Policy. Their names do not appear in the Policy. They are not signatories to any other agreement by which they might assert rights subject to the Policy. Plaintiffs have neither not sought to compel Ironshore to pay under the Policy, nor have they asserted any other affirmative claims against Ironshore in any court or arbitral proceeding other than this one.

6.      Despite Plaintiffs' clear lack of consent to participate in any arbitration with Ironshore, Ironshore has manifested a determination to proceed with arbitration. Furthermore, the arbitral organization administering the arbitration has refused entreaties by Plaintiffs and others to require a resolution of the issue of arbitrability before allowing the arbitration to proceed. The confirmation of appointment of an arbitral tribunal is imminent.

7.      The nature of the dispute and Ironshore's course of conduct make clear that, if Plaintiffs refuse to participate in the arbitration, Ironshore will seek to arbitrate Plaintiffs' rights *in absentia.*

8.      Without timely court intervention, Plaintiffs will be face an untenable dilemma: either (i) participate in an arbitration to which they did not consent, submitting their objections to the tribunal, and be bound by their determination; or (ii) refuse to participate in the arbitration and wait to litigate the enforceability of any award Ironshore might obtain therein.

9.      Plaintiffs come to this Court seeking a declaration that, as to them, (a) Ironshore's claims are not arbitrable and that, as against them, (b) any arbitral award obtained by Ironshore will be unenforceable as a matter of law.

## JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1332 because the amount in controversy exceeds $75,000, exclusive of costs, and there is complete diversity as between all plaintiffs and defendant.

11.     Venue is proper under 28 U.S.C. § 1391(b) because Ironshore is doing and transacting business in this Judicial District, including suing Eidos in this Court to compel the Arbitration.

## PARTIES

12.     McKenna is a law firm organized as a limited liability partnership pursuant to the laws of Georgia and having its principal place of business in Atlanta, Georgia.

13.     Song Jung is a partner of McKenna in its Washington, D.C. office.

14.     Gaspare ("Gap") Bono is a partner of McKenna in its Washington, D.C. office.

15.     On information and belief, Ironshore is an Arizona corporation, having its principal place of business in Boston, Massachusetts.

## APPLICABLE LAW

16.     The underlying dispute as to arbitrability is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, since the arbitration provision on which Ironshore bases its demand for arbitration is found in a contract "evidencing a transaction involving commerce," as defined in the Federal Arbitration Act.

17.     Plaintiffs bring this complaint under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Fed. R. Civ. P. 57.

18.     Plaintiffs specifically request that the Court exercise its power under Fed. R. Civ. P. 57 to "order a speedy hearing" of this declaratory-judgment action.

## GENERAL ALLEGATIONS

### I.  General Background

19.     In 2010, Ironshore, as insurer, issued a contingent loss reimbursement policy (the "Policy") to Eidos, as insured.  The Policy named a third party, Stairway Capital Management II LP ("Stairway") as loss payee.

20.     Stairway had required Eidos to obtain the Policy as a condition precedent to Stairway issuing a loan to Eidos (the "Loan").  Eidos obtained the Loan to finance certain patent enforcement litigation by Eidos.  Plaintiff McKenna was Eidos' counsel in that litigation.

21.     The Policy required Ironshore to pay Stairway the value of any Loan principal outstanding as of November 2, 2013.

### II.  Underlying Dispute and Arbitration

22.     As of November 2, 2013, the entire Loan principal remained outstanding, and both Stairway and Eidos demanded that Ironshore pay the outstanding principal pursuant to the Policy.

23.     Ironshore denied Stairway and Eidos' claims on the Policy and instead initiated the pending arbitration against Eidos before the International Centre for Dispute Resolution ("ICDR"), a division of the American Arbitration Institute ("AAA"), styled *Ironshore v. Eidos Partners, LLC, et al.*, Case No. 50 195 T 00970 13.

24.     Ironshore filed an Amended Statement of Claim in that arbitration in June 2014. In that pleading, Ironshore contests its obligation to pay under the Policy, and alleges, among other things, that Eidos and Plaintiffs fraudulently induced Ironshore to issue the coverage.

Ironshore also alleges that Eidos and Plaintiffs committed certain torts that entitle Ironshore to money damages.[1]

## III.    Basis for Arbitrability as to Plaintiffs

25.    In both its original Statement of Claim—which named Eidos as the sole respondent—and its Amended Supplemental Statement of Claim, Ironshore relies exclusively on the arbitration clause in the Policy as the basis for arbitrability of the dispute ("Arbitration Clause").

26.    That Arbitration Clause, found in Section V.D of the Policy and titled "Dispute Resolution/Arbitration," states in its entirety as follows:

> In the event any controversy, claim or dispute arises in connection with this Policy, the Insurer and the Insured shall participate in a non-binding mediation in which the Insurer and the Insured shall attempt in good faith to resolve such controversy, claim or dispute.  In the event any such controversy, claim or dispute is not resolved in mediation the matter shall be submitted to final and binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect.  Each party shall appoint one arbitrator and the two arbitrators so appointed shall select a third independent arbitrator. Arbitration shall take place in New York, New York, unless otherwise agreed.
>
> The parties hereto agree that:
>
> > (1)    the speedy resolution of any disputes between them as a consequence of this arbitration clause is a mutual and material inducement to enter into this Policy;
> >
> > (2)    the arbitrators in any award may assess arbitration fees and expenses in favor of any party and in favor of the American Arbitration Association, in the event that any administrative fees or expenses are due the American Arbitration Association; and
> >
> > (3)    awards pursuant to this clause are intended to be the exclusive binding dispute resolution mechanism among the parties.

---

[1] Because the arbitral filings and proceedings are confidential, Plaintiffs have herein limited the details they can disclose.  Plaintiffs can and will discuss further details of the underlying arbitration pursuant to an appropriate sealing order.

27.     Plaintiffs are not party to this Arbitration Clause.  Nor have they in any other way consented to arbitrate this dispute—or any other dispute—with Ironshore.

28.     Plaintiffs are legal counsel to Eidos in the underlying patent enforcement litigation, and also counseled Eidos its efforts to obtain financing and insurance.

29.     Plaintiffs are not parties to the Loan agreement or the Policy.

30.     Plaintiffs are not parties to any agreement incorporated into the Policy.

31.     Plaintiffs are not parties to any agreement incorporating the Policy.

32.     Plaintiffs have not asserted any rights—whether direct or indirect—in the Policy.

33.     Plaintiffs have not asserted any claims against Ironshore in any forum related to Ironshore's obligation to pay under the Policy.

## IV.    Ironshore Seeks To Invalidate the Policy

34.     In the arbitration, Ironshore argues that the Policy is void because it is the product of fraudulent inducement.  Ironshore alleges that but for certain fraudulent misrepresentations, it would not have issued the Policy.

35.     As previously stated, this Policy, which Ironshore now contends is void in its entirety, contains the sole arbitration clause cited by Ironshore as providing the basis of arbitrability for this proceeding.

## V.     Ironshore's Tort Claims and Tort Damages

36.     In arbitration, Ironshore alleges a variety of breaches of contractual, common law, and statutory duties.

37.     For these alleged breaches, Ironshore seeks compensatory and punitive damages.

## VI.    Speedy Resolution of This Declaratory-Judgment Action

38.     The arbitration initiated by Ironshore is progressing rapidly.

39.     The ICDR has refused Plaintiffs' express demands to resolve the issue of arbitrability before the arbitration moves forward.  The ICDR has stated that all issues related to the jurisdiction of the tribunal must be submitted to, and resolved by, the tribunal itself.

40.     The ICDR has demanded that the parties conclude the procedure for appointing party arbitrators literally within days.

41.     Ironshore and Eidos have already identified party arbitrators and have agreed on a third, neutral arbitrator.

42.     Plaintiffs expect that the ICDR will soon confirm the panel and direct all parties, including Plaintiffs, to schedule a preliminary conference with the tribunal and to submit position statements.

43.     By naming Plaintiffs as respondents in its Amended Supplemental Statement of Claim, Ironshore has demonstrated its intention to obtain an arbitral award against Plaintiffs.

44.     If Plaintiffs refuse to participate in the arbitration, Ironshore can be expected to pursue its claims against Eidos, many of which allege identical, coordinated, or otherwise parallel wrongful conduct between Eidos and McKenna.

45.     Because of the related nature of the allegations against Eidos and McKenna, any arbitral award against Eidos would likely implicate McKenna's rights as well.

46.     Given their attempt to add Plaintiffs as parties to the Arbitration, it is reasonable to assume that Ironshore will, to the extent possible, attempt to enforce against Plaintiffs any arbitral award it obtains.

47.     In light of the foregoing, Plaintiffs ask this Court to exercise its authority under Fed. R. Civ. P. 57 to "order a speedy hearing" of this declaratory-judgment action.

## CAUSES OF ACTION

### COUNT I
### Declaratory Judgment—Arbitrability and Jurisdicton of the AAA/ICDR

48.     Plaintiffs incorporate by reference all allegations in each of the preceding paragraphs as if fully set forth herein.

49.     In the Arbitration with Eidos, Ironshore alleges that its damages arise out of wrongful conduct by, among others, Eidos and Plaintiffs.

50.     Ironshore has affirmatively attempted to join Plaintiffs as respondents in the Arbitration by naming them as respondents in its Amended Supplemental Statement of Claim.

51.     The AAA/ICDR have been unreceptive to Plaintiffs' arguments that matters of arbitrability as to them must be resolved by a court before the arbitration proceeds.

52.     AAA/ICDR have insisted that all matters of jurisdiction and arbitrability be submitted to the arbitral tribunal.

53.     AAA/ICDR have insisted Plaintiffs participate in the selection of an arbitral panel and have threatened that, should Plaintiffs fail to participate, AAA/ICDR will designate arbitrators on their behalf.

54.     Plaintiffs seek a declaration of this Court that they have not consented to Arbitration and that the AAA/ICDR have no authority to administer arbitration proceedings as to them.

### COUNT II
### Declaratory Judgment—Enforceability of Arbitral Award

55.     Plaintiffs incorporate by reference all allegations in each of the preceding paragraphs as if fully set forth herein.

56.     The Ironshore Arbitration appears likely to proceed against Eidos, if not other parties as well.

8

57.    The nature of Ironshore's allegations against Plaintiffs creates a likelihood that any arbitral award against Eidos could, directly or indirectly, implicate the rights of Plaintiffs as well.

58.    Because Plaintiffs have not consented to Arbitration, and because the AAA/ICDR lacks any authority to administer arbitration proceedings as to Plaintiffs, Plaintiffs seek a declaration that any arbitral award obtained by Ironshore in the Arbitration is unenforceable as to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this Court to enter judgment as follows:

A.    Declaring that Ironshore's allegations against Plaintiffs are not arbitrable and that for that reason Plaintiffs cannot be compelled to arbitrate;

B.    Declaring that any award Ironshore obtains from the arbitral tribunal is unenforceable as against Plaintiffs;

C.    Awarding Plaintiffs their attorney fees and costs; and

D.    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        August 19, 2014

SUTHERLAND ASBILL & BRENNAN LLP

BY: _____
        Robert D. Owen (2568)
        Travis James Mock (2414)
    The Grace Building, 40th Floor
    1114 Avenue of the Americas
    New York, New York  10036
    (212) 389-5000
    *Attorneys for Plaintiffs*