UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
MCKENNA LONG & ALDRIDGE, LLP;             :
SONG JUNG; and GASPARE BONO,              :
:
          *Plaintiffs*,             :
:
    - against -                          :     Civil Action No. 14-CV-6633 (KBF)
:
IRONSHORE SPECIALTY INSURANCE             :
COMPANY,                                  :
:
          *Defendant*.              :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VINCENT W. SEDMAK,                        :
:
          *Plaintiffs*,             :
:
    - against -                          :     Civil Action No. 14-CV-6675 (KBF)
:
IRONSHORE SPECIALTY INSURANCE             :
COMPANY,                                  :
:
          *Defendant*.              :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## THE McKENNA PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Robert D. Owen (2568)
Travis James Mock (2414)
SUTHERLAND ASBILL & BRENNAN LLP
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York  10036
(212) 389-5000
robert.owen@sutherland.com
travis.mock@sutherland.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS .................................................................................................3

    I.      Summary of Underlying Dispute ...............................................................3

    II.     Arbitration and Related Actions in This Court ........................................3

    III.    Arbitration and Dispute as to Arbitrability .............................................4

ARGUMENT .....................................................................................................................6

    I.      IRONSHORE'S CLAIMS ARE NOT ARBITRABLE AS TO
         PLAINTIFFS. ...........................................................................................6

         A.     Because Plaintiffs have not clearly and unmistakably consented to
              arbitration, the question of arbitrability can only be resolved by the
              Court. ............................................................................................6

         B.     This Court should find that Plaintiffs are not bound to arbitrate. ...............7

    II.     THIS COURT SHOULD ENTER JUDGMENT DECLARING THAT
         THE DISPUTE IS NOT ARBITRABLE AS TO PLAINTIFFS. ..........................12

         A.     This Court has authority to issue declaratory relief in this matter. ............12

         B.     This Court should grant declaratory relief. ...............................................13

CONCLUSION ..................................................................................................................15

24442675.1

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## CASES

*Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins. Co.*,
  857 F. Supp. 2d 404 (S.D.N.Y. 2012)....................................................................7, 9

*Arhontisa Maritime Ltd. v. Twinbrook Corp.*,
  No. 01-CV-5044, 2001 WL 1142136 (S.D.N.Y. Sept. 27, 2001)...........................11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986).....................................................................................................13

*Broadview Chem. Corp. v. Loctite Corp.*,
  417 F.2d 998 (2d Cir.), *cert. denied*, 397 U.S. 1064 (1969)....................................14

*Chocktaw Generation Ltd. P'ship v. Am. Home Assurance Co.*,
  271 F.3d 403 (2d Cir. 2001)........................................................................................10

*Contec Corp. v. Remote Solution Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005)........................................................................................10

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)..................................................................................................7, 14

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 83 (2002).........................................................................................................6

*JLM Indus., Inc. v. Stolt-Nielsen S.A.*,
  387 F.3d 163 (2d Cir. 2004)........................................................................................10

*Lerner v. Amalgamated Clothing & Textile Workers Union*,
  938 F.2d 2 (2d Cir. 1991)............................................................................................11

*Life Techs. Corp. v. AB Sciex Pte Ltd.*,
  803 F. Supp. 2d 270 (S.D.N.Y. 2011).........................................................................8

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
  252 F.3d 218 (2d Cir. 2001)........................................................................................13

*Maryland Casualty Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270 (1941)......................................................................................................12

*NASDAQ OMX Grp., Inc. v. UBS Sec. LLC*,
  957 F. Supp. 2d 388 (S.D.N.Y. 2013).........................................................................14

## TABLE OF AUTHORITIES
### (Continued)

Page

*Oppenheimer & Co. Inc. v. Deutsche Bank AG,*
  09-CV-8154, 2010 WL 743915 (S.D.N.Y. Mar. 2, 2010)....................................................8, 9

*PaineWebber v. Bybyk,*
  81 F.3d 1193 (2d Cir.1996)....................................................................................14

*Public Affairs Assocs. v. Rickover,*
  369 U.S. 111 (1962)..............................................................................................14

*Ragone v. Atl. Video at Manhattan Ctr.,*
  595 F.3d 115 (2d Cir. 2010)....................................................................................10

*Republic of Ecuador v. Chevron Corp.,*
  638 F.3d 384 (2d Cir.2011).......................................................................................6

*Ross v. Am. Express Co.,*
  547 F.3d 137 (2d Cir. 2008)....................................................................................10

*Salomon Bros., Inc. v. Carey,*
  556 F. Supp. 499 (S.D.N.Y. 1983) ..........................................................................14

*Schneider v. Thailand,*
  688 F.3d 68 (2d Cir. 2012).........................................................................................6

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,*
  198 F.3d 88 (2d Cir. 1999)......................................................................................10

*Steelworkers v. Warrior & Gulf Nav. Co.,*
  363 U.S. 574 (1960)...............................................................................................13

*Thomson-CSF, S.A. v. Am Arbitration Ass'n,*
  64 F.3d 773 (2d Cir. 1995)....................................................................................7, 10

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,*
  241 F.3d 135 (2d Cir.2001)....................................................................................14

*Veera v. Janssen,*
  05-CV-2145, 2005 WL 16006054 (S.D.N.Y. July 5, 2005)...........................................11

### RULES & STATUTES

Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* ....................................................12

Federal Rule of Civil Procedure 56 ...............................................................................1

24442675.1

## TABLE OF AUTHORITIES
### (Continued)

Page

### OTHER AUTHORITIES

Martin Domke et al., *Domke on Commercial Arbitration* ........................................................9, 13

Restatement (Second) of Agency (1958) ......................................................................................11

Plaintiffs McKenna Long & Aldridge LLP and two of its partners, Song Jung and Gaspare Bono (collectively, "McKenna" or "Plaintiffs"), respectfully submit this memorandum in support of their motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56.

This action presents for decision a straightforward question of law:  Can Plaintiffs be required to participate in an arbitration conducted pursuant to an arbitration clause included in an insurance policy where they neither signed the policy nor otherwise agreed to be bound by that arbitration agreement?  Plaintiffs seek a declaratory judgment that the dispute is not arbitral as to them.

## PRELIMINARY STATEMENT

This action is brought to prevent Plaintiffs from being forced to participate in an arbitration to which they never agreed, either expressly or by operation of law, before a panel they had no role in choosing, regarding the validity of a contract of insurance to which they are neither the insureds, nor loss payees, nor otherwise parties.

The party seeking to prosecute claims against Plaintiffs is defendant Ironshore Specialty Insurance Company ("Ironshore" or "Defendant").  In the arbitration, Ironshore is seeking to avoid an apparent obligation to pay on an insurance policy (the "Policy") that it, as insurer, issued to Eidos Partners LLC and several of its subsidiaries (collectively, "Eidos"), as insureds. Ironshore initiated arbitration against Eidos alone but has now amended its statement of claim purportedly to add Plaintiffs and certain other third parties as respondents.  Ironshore bases jurisdiction for the arbitration solely on an arbitration clause in the Policy.

Plaintiffs never consented to arbitrate this dispute—or any dispute—with Ironshore. Plaintiffs are not signatories to the Policy, the arbitration clause of which is the exclusive basis

for arbitrability of this dispute.  They are not loss payees under the Policy.  Their names do not appear in the Policy.  They are not signatories to any other agreement by which they might assert rights under the Policy.  Plaintiffs have not sought to compel anyone to do anything under the Policy, nor have they asserted any other affirmative claims against Ironshore in any court or arbitral proceeding other than this one.

Despite Plaintiffs' clear lack of consent to participate in any arbitration with Ironshore, Ironshore has manifested a determination to proceed with an arbitration that names Plaintiffs as respondents.  Furthermore, the ICDR, the arbitral organization administering the arbitration, has declared that Plaintiffs' only recourse is to argue the issue of arbitrability before the very panel they contend has no power over them.  The confirmation by ICDR of appointment of an arbitral tribunal is imminent.

The nature of the dispute and Ironshore's course of conduct make clear that, if Plaintiffs refuse to participate in the arbitration, Ironshore will seek to arbitrate Plaintiffs' rights *in absentia*.  Without timely court intervention, Plaintiffs will face an untenable dilemma:  either (i) participate in an arbitration to which they did not consent, submit their objections to the tribunal, and be bound by its non-appealable determination; or (ii) refuse to participate in the arbitration and essentially default, and then wait to litigate the enforceability of any award Ironshore might obtain against them therein.

Plaintiffs therefore come to this Court seeking a judgment declaring (a) that Ironshore's claims are not arbitrable as to them and, (b) that any arbitral award obtained by Ironshore would be unenforceable as against them.

## STATEMENT OF FACTS

**I.     Summary of Underlying Dispute**

In 2010, Ironshore, as insurer, issued a contingent loss reimbursement policy (the "Policy") to Eidos, as insured.  The Policy named a third party, Stairway Capital Management II LP ("Stairway"), a hedge fund, as loss payee.

Stairway had required Eidos to obtain the Policy as a condition precedent to Stairway issuing a loan to Eidos (the "Loan").  Eidos obtained the Loan to finance certain patent enforcement litigation.  Plaintiff McKenna was Eidos' counsel in that litigation and Plaintiffs Jung and Bono are partners at McKenna who worked on Eidos' matters.

The Policy simply and unambiguously required Ironshore to pay Stairway the value of any Loan principal outstanding as of November 2, 2013.  As of that date, the entire Loan principal remained outstanding, and both Stairway and Eidos demanded that Ironshore pay the outstanding principal pursuant to the Policy.  Litigation by Ironshore, not payment, ensued.

**II.    Arbitration and Related Actions in This Court**

Ironshore denied Stairway and Eidos' claims on the Policy and filed suit in this Court to compel Eidos to arbitrate pursuant to the arbitration provisions in the Policy.  *Ironshore Specialty Ins. Co. v. Eidos Partners, LLC, et al.*, 13-CV-8434 (S.D.N.Y. Nov. 26, 2013) (Forrest, J.).  After a failed mediation, this Court granted Ironshore's motion to compel arbitration, whereupon Ironshore initiated the pending arbitration against Eidos before the International Centre for Dispute Resolution ("ICDR"), a division of the American Arbitration Institute ("AAA").  *See* Plaintiffs' Fed. R. Civ. P. 56.1(b) Statement ("SOF") ¶ 3; *see also Ironshore v. Eidos Partners, LLC, et al.*, Case No. 50 195 T 00970 13.

Stairway, as loss payee under the Policy, also sued in this Court seeking to enjoin the arbitration in favor of litigation.  *Stairway Capital Mgmt. II L.P v. Ironshore Specialty Ins. Co.*,

14-CV-0025 (S.D.N.Y. Jan. 2, 2014) (Forrest, J.).  Owing to a lack of diversity, however, Stairway soon dismissed its federal case and re-filed in state court.  *Stairway Capital Mgmt. II L.P v. Ironshore Specialty Ins. Co.*, Index. No. 650363/2014 (N.Y. Sup. Ct., Feb. 3, 2014) (Ramos, J.).  Justice Ramos refused to enjoin the arbitration as to Stairway, *id.*, NYSCEF No. 112 (entered July 30, 2014) (order denying Stairway's motion for summary judgment).

### III.    Arbitration and Dispute as to Arbitrability

In June 2014, Ironshore filed an Amended Supplemental Statement of Claim adding Plaintiffs and others as respondents in the ICDR arbitration and alleging, among other things, that Eidos and Plaintiffs fraudulently induced Ironshore to issue the coverage.  Ironshore also alleged that Eidos and Plaintiffs committed certain torts that entitle Ironshore to money damages. *See* SOF ¶ 1.

On August 6, 2014, counsel for Plaintiffs were contacted for the first time by ICDR case manager Shashi Dholandas, who instructed the parties to nominate arbitrators.  However, Plaintiffs were not given the right to choose their own arbitrator but instead were told by ICDR that they must agree on a single arbitrator with Eidos and also with Stairway, a party as to which Plaintiffs have adverse legal interests.  *See id.* ¶ 2.

Counsel for Stairway argued to the ICDR that it never consented to arbitrate, but ICDR case manager Mr. Dholandas informed all parties, including Plaintiffs, that all issues related to the jurisdiction of the tribunal must be submitted to the tribunal for resolution.  *See id.*; *see also* Declaration of Robert Owen, dated November 25, 2014 ("Owen Decl."), Ex. A.  [Email from Shashi Dholandas to Caroline DeCourcey *et al.*, dated Aug. 6, 2014 6:17 PM.]

Counsel for Plaintiffs and Eidos notified Mr. Dholandas of their position that the dispute was not arbitrable as to them and that their objection as to arbitrability could only be adjudicated by a court.  *See* SOF ¶ 2; *see also* Owen Decl., Exs. B, C, & D.  [Email from Gaspare Bono to

Shashi Dholandas *et al.*, dated Aug. 6, 2014 5:51 PM; email from Matthew Martin to Shashi Dholandas *et al.*, dated Aug. 7, 2014 12:01 PM; email from Gaspare Bono to Shashi Dholandas *et al.*, dated Aug. 13, 2014 1:03 PM.]  Mr. Dhondolas did not respond to these objections.

Counsel for Ironshore responded to Plaintiffs' objection and asserted Ironshore's position that Plaintiffs and other non-signatories were bound by the arbitration agreement in the Policy because of their role in Eidos' request for the Policy and because they allegedly received "direct benefits" from the policy.  *Id.* Ex. E.  [Email from Peter Stroili to Shashi Dholandas *et al.*, dated Aug. 14, 2014 12:26 PM.]  Gaspare Bono, counsel for Eidos, responded and reasserted the position of Eidos and Plaintiffs.  *Id.* Ex. F.  [Email from Gaspare Bono to Shashi Dholandas *et al.*, dated Aug. 14, 2014 3:58 PM.]

Mr. Dholandas responded, but again failed to address Plaintiffs' objection as to arbitrability.  *Id.* Ex. G.  [Email from Shashi Dholandas to Gaspare Bono *et al.*, dated Aug. 14, 2014 5:14 PM.]  After addressing several logistical issues related to selection of arbitrators, Mr. Dholandas told the parties that their failure to designate arbitrators in accordance with ICDR rules within seven days would result in the selection of an arbitral panel by the ICDR.  *Id.*  In subsequent emails, Mr. Dholandas continued to disregard Plaintiffs' objections, going so far as to require (at the request of counsel for Ironshore) that Respondents provide certain information regarding the selection of arbitrators before the August 21.  *Id.*  Exs. H & I.  [Email from Kevin Windells to Shashi Dholandas, dated Aug. 19, 2014 5:18 PM; Email from Shashi Dholandas to Kevin Windells *et al.*, dated Aug. 19, 2014 7:59 PM.]

Plaintiffs responded one more time, again raising their objections to proceeding with the arbitration.  *Id.* Ex. J [Email from Robert Owen to Shashi Dholandas *et al.*, dated Aug. 20, 2014

9:58 AM.]  Mr. Dholandas' only response was to confirm receipt of the correspondence.  *Id.* Ex.
K [Email from Shashi Dholandas to Robert Owen *et al.*, dated Aug. 20, 2014 10:38 PM.]

Ironshore continues to press forward with its intention to prosecute the arbitration against
Plaintiffs.

## A R G U M E N T

## I.   IRONSHORE'S CLAIMS ARE NOT ARBITRABLE AS TO PLAINTIFFS.

Arbitrability is "a term of art covering 'dispute[s] about whether the parties are bound by
a given arbitration clause' [i.e., formation] as well as 'disagreement[s] about whether an
arbitration clause in a concededly binding contract applies to a particular type of controversy'
[i.e., scope]."  *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir.2011) (quoting
*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 83, 84 (2002)).  Ironshore's arbitration against
Plaintiffs is fatally flawed because Ironshore's claims against Plaintiffs are not arbitrable.

### A.   Because Plaintiffs have not clearly and unmistakably consented to arbitration, the question of arbitrability can only be resolved by the Court.

Unless the parties have "clearly and unmistakably" consented to arbitrate, the question of
arbitrability must be decided by the courts, not the arbitrators.  *Schneider v. Thailand*, 688 F.3d
68, 71 (2d Cir. 2012) ("The question whether the parties have submitted a particular dispute to
arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the
parties clearly and unmistakably provide otherwise.") (quoting *Howsam*, 537 U.S. at 83 (internal
quotations removed)).  And in the absence of a clear and unmistakable consent to arbitrate, an
arbitral award is unenforceable unless and until a court resolves the issue of arbitrability.
*Schneider*, 688 F.3d at 71 ("Thus, a party resisting confirmation of an arbitration award is
entitled to an independent court review of a question of arbitrability unless there is clear and

unmistakable evidence that the parties agreed to arbitrate that question.") (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 947 (1995)).

Plaintiffs have not clearly and unmistakably consented to arbitrate this dispute. *See* SOF ¶ 4. In fact, none of them is party to any agreement to arbitrate any dispute with Ironshore. *See id.* ¶ 5. As such, the ICDR has no authority to decide arbitrability as to Plaintiffs.

B.     **This Court should find that Plaintiffs are not bound to arbitrate.**

Ironshore cannot point to any applicable arbitration agreement that any of the Plaintiffs signed. It is undisputed that no Plaintiff signed the arbitration agreement that Ironshore argues provides the sole basis for arbitrability of this dispute. *See id.* ¶ 4.

Therefore, Ironshore must establish that Plaintiffs are somehow bound by an arbitration agreement that they did not sign. "[T]he Court of Appeals recognizes 'five theories for binding nonsignatories to arbitration agreements' 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins. Co.*, 857 F. Supp. 2d 404, 414 (S.D.N.Y. 2012) (quoting *Thomson-CSF, S.A. v. Am Arbitration Ass'n*, 64 F.3d 773, 76 (2d Cir. 1995)).

When arguing that Plaintiffs are bound to arbitrate this claim, Ironshore has expressly relied on only two of the five bases above: "direct benefit" estoppel and incorporation by reference. Ironshore's answer also includes an affirmative defense asserting that Plaintiffs were agents of the insured Eidos and as such are "in effect, parties to the arbitration agreement . . . ." We deal with each of Ironshore's three arguments in turn.

*Direct Benefit Estoppel*. First, Ironshore argues that Plaintiffs are bound to arbitrate because, as legal counsel in the underlying patent litigation, they are a direct beneficiary of the insurance Policy. *See* Owen Decl. Ex. E. Put differently, Ironshore contends that Plaintiffs are *direct* beneficiaries of the Policy because (i) the Policy was a condition precedent to (ii) the

issuance of a loan from Stairway to Eidos (pursuant to a separate loan agreement), (iii) which loan was necessary to fund litigation efforts led by Eidos and a third party (under a separate patent agreement between Eidos and the patent owner), (iv) which litigation efforts were to be prosecuted by McKenna (pursuant to a separate client agreement among McKenna, Eidos, and the patent owner) and (v) for which McKenna ultimately would be owed compensation (pursuant to the patent agreement).  This is hardly the direct benefit that the law requires before imposing an agreement to arbitrate on a nonparty.

Under an estoppel theory, a nonsignatory may be bound by an arbitration provision in an agreement only if it received a "direct benefit" therefrom.  The critical question, however, is what constitutes a "direct benefit."  Here, courts draw a critical distinction between a nonsignatory's exploitation of the "contract itself" (in which case the nonsignatory is bound) and their exploitation of a "benefit flow[ing] from [the] contractual relationship" (in which case the nonsignatory is not bound).  *See Life Techs. Corp. v. AB Sciex Pte Ltd.*, 803 F. Supp. 2d 270, 276 (S.D.N.Y. 2011).  Where the nonsignatory receives the contemplated benefit of the agreement – for example, (i) the coverage pursuant to the insurance policy, (ii) the ship classification pursuant to a classification agreement, or (iii) the funds pursuant to a settlement agreement – it has received a "direct benefit."  But where the party merely profits from the relationship of the contracting parties, the nonsignatory has not received a "direct benefit" and is not bound by the arbitration provision.  *See Oppenheimer & Co. Inc. v. Deutsche Bank AG*, 09-CV-8154, 2010 WL 743915 (S.D.N.Y. Mar. 2, 2010) (parent company of FINRA member that gained financially from subsidiary's issuance of auction rate securities experienced only an indirect benefit and was not obligated to participate in arbitrations brought by purchasers of such securities).

The direct benefit of a contract of insurance is the policy proceeds.  *McKenna was not paid with the Policy proceeds or indeed with any monies received from Ironshore*.  It was paid out of funds that a hedge fund, Stairway, loaned to Eidos, in a transaction separate from the insurance policy, and from settlement proceeds obtained in the litigation.  Stairway's loan of its own monies to Eidos was backed by the Ironshore Policy, but the attenuated relationship between the Policy and the payments to McKenna falls far short of the "direct benefit" the law requires before nonparties are required to subject themselves to arbitration.

While McKenna may have *indirectly* benefited from the relationship between Eidos and Ironshore , McKenna did not receive—directly or otherwise—the "direct benefit" of the insurance policy, *i.e.*, the insurance coverage.  Indirect benefits of an agreement do not suffice to force a nonsignatory like McKenna into arbitration over objection:

> A benefit of an arbitration is "indirect," so that a nonsignatory receiving a benefit cannot be compelled to arbitrate a claim, where the nonsignatory exploits the contractual relation of the parties, but not the agreement itself. The mere existence of an agreement with attendant circumstances that prove advantageous to a nonsignatory does not constitute the type of direct benefit that justifies compelling arbitration by a nonparty to the underlying contract.[3.50]

Martin Domke et al., *Domke on Commercial Arbitration* § 13.9 (Effect of Arbitration Agreements on Nonsignatories) (database updated Aug. 2014).

Nor is McKenna seeking to enforce any particular provision of the insurance policy.  And since McKenna did not receive a direct benefit, "'the mere fact of [its] affiliat[ion] with a signatory will not suffice to estop [it] from avoiding arbitration, no matter how close the affiliation is.'"  *Alfa Laval*, 857 F. Supp. 2d at 414 (quoting *Oppenheimer & Co.*, 2010 WL 743915, at *2.)

*Incorporation by Reference*.  Second, Ironshore argues that Plaintiffs are bound to arbitrate because some of them signed certain documents that Eidos then submitted to Ironshore

as part of its request for the Policy.  *See* Owen Decl. Ex. E.  But this argument fails to satisfy any cognizable ground for binding a nonsignatory.   To the extent this argument is meant to invoke incorporation by reference, Ironshore misinterprets the legal theory and in fact has it backwards. Under the incorporation theory, a nonsignatory may be bound to arbitrate only if it signed an agreement that *incorporates the agreement containing the arbitration provision*.  *Cf. Thomson-CFS*, 64 F.3d at 777 (noting that a nonsignatory could not be bound under an incorporation theory because it had not adopted any agreement incorporating the arbitration provision). Ironshore's theory turns incorporation by reference on its head by arguing that Plaintiffs are bound because they signed documents that later were incorporated *by others* into the agreement containing the arbitration provision.

This theory also fails to the extent it is intended to invoke equitable estoppel.  The Second Circuit has unequivocally held that the relatedness or "intertwinedness" of the parties or of the claims is not a basis to bind a *nonsignatory* to an arbitration agreement.  *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995).  The court there reiterated the basic point presented by this motion:  "Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so."  *Id.*  In no case since *Thomson* has the Second Circuit departed from this view.[1]

*Agency*.  Ironshore's affirmative defense of agency also is unavailing.  *See Ironshore Answer* ¶ 61 (ECF No. 11).  Although "[t]raditional principles of agency law may bind a nonsignatory to an arbitration agreement," *Thomson-CSF*, 64 F.3d at 777, mere agency alone

---

[1] *See, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010); *Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008); *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 209 (2d Cir. 2005); *JLM Indus., Inc. v. Stolt-Nielsen S.A.*, 387 F.3d 163, 176 (2d Cir. 2004); *Chocktaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999).  In no case *Thomson* has the Second Circuit applied this "intertwinedness" theory of equitable estoppel to compel a nonsignatory like McKenna to arbitrate.

10

cannot render an agent a party to a contract, including of course an agreement to arbitrate. "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."  Restatement (Second) of Agency § 320 (1958).

Courts apply this principle to hold that an agent cannot be compelled to arbitrate under a contract made on behalf of the principal—even if the agent signed the contract.  *See Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 6 (2d Cir. 1991) (holding that a contract's arbitration agreement did not bind plaintiff who had signed the contract as an agent for a disclosed principal, "absent clear and explicit evidence of the agent's intent to substitute or superadd his personal liability"); *see also Arhontisa Maritime Ltd. v. Twinbrook Corp.*, No. 01-CV-5044, 2001 WL 1142136, at *3 (S.D.N.Y. Sept. 27, 2001) (confirming that the "well-established principle" that an agent is not bound by his principal's contracts "has consistently been applied in the arbitration context"); *see also Veera v. Janssen*, 05-CV-2145, 2005 WL 16006054, at *3 (S.D.N.Y. July 5, 2005) (citing *Arhontisa* and holding that agents who signed contract on behalf of their principal were not bound by the contract's arbitration clause).

The case is even simpler here, where the alleged agent (McKenna) did not sign the contract.  In addition, McKenna did not even have primary responsibility for negotiating the Policy; it merely provided certain information in support of Eidos' request for the Policy.  These facts, which render it unclear whether an agency relationship existed at all, are entirely devoid of "clear and explicit evidence" that McKenna intended to "substitute or superadd [its] personal liability" to that of Eidos.[2]

---

[2] Further, to the extent McKenna is deemed to have been an agent of Eidos, that agency status may preclude a finding that McKenna is bound to the arbitration agreement under any theory whatsoever.  *See Arhontisa*, at *4 n.2 (holding that agent's receipt of a direct benefit from the contract "misses the point" because an agent "stands in a completely different relationship to a contract" than an ordinary nonparty.)

**II.    THIS COURT SHOULD ENTER JUDGMENT DECLARING THAT THE DISPUTE IS NOT ARBITRABLE AS TO PLAINTIFFS.**

 A. **This Court has authority to issue declaratory relief in this matter.**

This Court has authority to issue declaratory relief in this case because a "case of actual controversy" exists between Plaintiffs and Ironshore.  Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  The test for determining the existence of an "actual controversy" has been described as follows:  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  This case satisfies all of these hallmarks of an "actual controversy."

The parties to this controversy undoubtedly have adverse legal interests—namely, in what forum Ironshore may assert its legal claims against Plaintiffs.  *See* SOF ¶ 6.  Ironshore, by its Amended Supplemental Statement of Claim and subsequent course of conduct, has asserted a legal interest in submitting those claims to arbitration.  Plaintiffs, who never consented to arbitrate any dispute with Ironshore, have a legal interest in their right to defend against Ironshore's claims in a court of law.

This controversy is substantial.  *See id.* ¶ 7.  Ironshore's Amended Supplemental Statement of Claim alleges causes of action against Plaintiffs for substantial damages.  The answer to the question of which forum will adjudicate those significant claims will, in turn, determine other critical issues, including applicable rules of procedure and rights of appeal.

This controversy is immediate and real.  *See id.*  Ironshore has initiated arbitration against Plaintiffs.  Plaintiffs have advised both Ironshore and the ICDR of their objections that the matter is not arbitrable as to them.  Despite that notice, both Ironshore and the ICDR have chosen to

push forward with arbitration.  But the question of arbitrability as to these nonsignatory Plaintiffs

must be determined in a court, not by an arbitration panel:

> An arbitration panel may not determine the rights or obligations of non-parties to the arbitration; a decision whether parties other than those formally signatories to an arbitration clause may have their rights and obligations determined by an arbitrator is not within the province of the arbitrator himself but only the court.

Martin Domke et al., *Domke on Commercial Arbitration* § 13.1 (Effect of Arbitration

Agreements on Nonsignatories) (database updated Aug. 2014).

Because the parties have adverse legal interests and because the controversy is

substantial, immediate, and real, this Court has authority under the Declaratory Judgment Act to

issue declaratory relief.

B.    **This Court should grant declaratory relief.**

Plaintiffs never agreed, expressly or otherwise, to give up their right to have any claims

against them decided in a court of law.  As noted above, no agreement to which they are a party

incorporates the insurance policy's arbitration clause, and they are not "direct beneficiaries" of

the contract of insurance.  Consequently, Ironshore cannot *compel* Plaintiffs to participate in the

policy arbitration it has commenced against the insured (Eidos) and the loss payee (Stairway).

> While federal policy generally favors arbitration, the obligation to arbitrate nevertheless remains a creature of contract. Because arbitrators' authority arises only when the parties agree in advance to that forum, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc*., 252 F.3d 218, 224 (2d Cir.

2001).

Similarly, where there is no agreement to arbitrate and no showing of one of the five

exceptions discussed above, the presumption in favor of arbitration vanishes:

> Thus, any silence or ambiguity about whether the parties have agreed to arbitrate arbitrability "reverses the usual presumption that issues should be resolved in [arbitration's] favor." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,* 241 F.3d 135, 146 (2d Cir.2001) (internal quotations and citations omitted); *see also PaineWebber v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996) (stating that "where the arbitration agreement contains an ambiguity as to who determines eligibility, the Act's presumption favoring arbitration is reversed so that the court will ordinarily decide the question.") (quoting *First Options,* 514 U.S. at 944, 115 S.Ct. 1920).

*NASDAQ OMX Grp., Inc. v. UBS Sec. LLC*, 957 F. Supp. 2d 388, 403 (S.D.N.Y. 2013).

As shown in the prior section, the Court is authorized to grant Plaintiffs declaratory relief, and the facts of this case show that it should exercise its discretion to do so. *Salomon Bros., Inc. v. Carey*, 556 F. Supp. 499, 500 (S.D.N.Y. 1983); *Public Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962). This Court should grant Plaintiffs' requested relief.

When considering whether to exercise its discretion to issue declaratory relief, a court should consider whether "(1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and whether "(2) it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.), *cert. denied*, 397 U.S. 1064 (1969). "[I]f either of these objectives can be achieved[,] the action should be entertained and the failure to do so is error." *Id.*

Plaintiffs' legal posture is unclear and unsettled. Ironshore contends that they are required to participate in an arbitration on its policy; they contend they are not. The ICDR is insisting that Plaintiffs submit the question of arbitrability to the panel. Unless this Court grants them the relieve they seek, Plaintiffs are faced with the Hobson's choice of (i) participating in the arbitration where their claim of arbitrability will be determined by the panel's non-appealable determination, or (ii) sitting out the arbitration and fighting confirmation of any award rendered against them after the fact.

The requested declaratory relief would clarify and settle the question.  *See* SOF ¶ 8.

Therefore, this Court should exercise its discretion to grant Plaintiffs' requested declaratory

relief.

## CONCLUSION

Plaintiffs request that the Court enter an order declaring that Plaintiffs did not agree nor

are otherwise bound to arbitrate the claims Ironshore seeks to bring against them.  Specifically,

Plaintiffs respectfully ask this Court to enter judgment:

A.     Declaring that Ironshore's allegations against Plaintiffs are not arbitrable and that

for that reason Plaintiffs cannot be compelled to arbitrate;

B.     Declaring that any award Ironshore might obtain from the arbitral tribunal is

unenforceable as against Plaintiffs;

C.     Awarding Plaintiffs their attorney fees and costs; and

D.     Awarding Plaintiffs such other and further relief as the Court deems just and

proper.

*      *      *

*Reservation of Rights To Seek Injunctive Relief.*  Plaintiffs assume that Ironshore, Stairway and the ICDR will respect this Court's declaration of Plaintiffs' rights.  However, Plaintiffs reserve the right to seek appropriate injunctive relief staying the ICDR arbitration as to Plaintiffs if Ironshore, Stairway, or the ICDR purport to continue the arbitration as against any of them.

Dated:  New York, New York
        November 25, 2014

SUTHERLAND ASBILL & BRENNAN LLP

BY:  _____
        Robert D. Owen (2568)

Travis James Mock (2414)
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York  10036
(212) 389-5000
*Attorneys for Plaintiffs*

16